

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,437

**EX PARTE CLAUS DETREF THILES, Applicant**

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
## FROM DALLAS COUNTY

PRICE, J., delivered the opinion of the court in which MEYERS, WOMACK, JOHNSON, KEASLER, HERVEY and COCHRAN, JJ., joined. KELLER, P.J., filed a concurring opinion.

### O P I N I O N

This is a post-conviction application for writ of habeas corpus brought pursuant to Article 11.07.[1] We filed and set this application in order to address the applicant's claim that he is entitled to credit against his prison sentence for a lengthy period of time during which he was allowed to remain at large on an appellate bond even though, unbeknownst to him, the appellate mandate affirming his conviction had long since issued. Should he receive the

---

[1] TEX. CODE CRIM. PROC. art. 11.07.

credit he now seeks, the applicant will have discharged his sentence and would be entitled to immediate release. We will grant relief.

## FACTS AND PROCEDURAL POSTURE

The following procedural history is based on stipulations made at the writ of habeas corpus hearing. The applicant, Claus Detref Thiles, was indicted on July 7, 1981, and convicted on April 19, 1982, in Dallas County for aggravated sexual assault. He was sentenced to sixteen years in prison. He entered the Texas prison system on April 22, 1982, and filed his notice of appeal on July 12, 1982. The applicant appealed to the Fifth Court of Appeals in Dallas, and on November 19, 1984, that court reversed the conviction for a defective plea admonishment. The State then filed a petition for discretionary review, and on January 11, 1985, the applicant had an appeal bail set by this Court.[2] On January 25, 1985, the applicant was bench warranted back to the Dallas County Jail. Southwest Bonding Company filed his appeal bond, and the applicant was released from jail on that bond. The terms of the appeal bond did not include conditions requiring the applicant to report to the bondsman, or to make an appearance in the trial court without first being called to appear.

On February 19, 1986, this Court reversed the judgment of the court of appeals and remanded the cause to that court to consider the applicant's remaining grounds of error not previously determined on original submission. On July 14, 1987, the court of appeals issued

---

[2] "If the defendant requests bail after a petition for discretionary review has been filed, the Court of Criminal Appeals shall determine the amount of bail." TEX. CODE CRIM. PROC. art. 44.04(h).

its final opinion in the applicant's case, affirming the conviction. The court of appeals's mandate arrived at the trial court on October 20, 1987; however, *no warrant issued on this mandate until November 16, 2007*. No one from the Dallas County District Attorney's Office, officials of the Dallas County Criminal District Court Number 5, the Dallas County Sheriff's Office, or the Southwest Bonding Company took any action to have the applicant's bond forfeited from the time of his release on this appeal bond, January 25, 1985, until 2009. Nor was he ever called to appear before the trial court from the time of the issuance of the appellate mandate, October 20, 1987, until 2007, when the warrant on the mandate finally issued.

The applicant was initially stopped and arrested by police near his home in Missouri on May 21, 2009, for DWI, although that charge was later dismissed. Once the police determined that the applicant had an outstanding 2007 warrant from Dallas County, he was transferred from Missouri to Texas and is now serving his sentence in the Texas Department of Criminal Justice (TDCJ). From the time the applicant was released on the appeal bond, January 25, 1985, until the date of his arrest May 21, 2009, he accrued no additional criminal convictions. He remained a productive member of society during that time, lived openly under his own name, and made no effort to conceal his whereabouts.

The applicant has now filed this post-conviction application for writ of habeas corpus seeking relief. In his writ application he alleges, *inter alia*, that he was "constructively released" from custody, erroneously and through no fault of his own, and is therefore entitled

to his street time from the time that the mandate of affirmance was issued in his case in October 1987. The State agrees that applicant is entitled to relief on this claim. After holding a live evidentiary hearing, the trial court adopted the State's proposed findings of fact and conclusions of law and recommended that this Court grant the applicant relief. The trial court concluded that the applicant was, in effect, erroneously released and is entitled to day-for-day credit on the remainder of his sentence, which would then be immediately discharged. For the reasons explained below, we agree with the applicant, the State, and the trial court that the applicant is entitled to relief and should be given day-for-day credit for the rest of his sentence. Because this credit fully discharges his sentence, we will order his immediate release.

## ANALYSIS

The applicant relies by analogy to a long line of cases in which convicted inmates were inadvertently released from custody when they should have remained serving their legitimately imposed sentences.[3] In such cases of erroneous release, we have consistently held that "an individual is entitled to time credit toward the expiration or discharge of a

---

[3] The most recent cases in this line include: *Ex parte Hale*, 117 S.W.3d 866, 873 (Tex. Crim. App. 2003) (burglary sentence of habeas applicant who was twice erroneously released to mandatory supervision ordered discharged when his period of supervision on erroneously granted mandatory supervision expired); *Ex parte Rowe*, 277 S.W.3d 18, 19-20 (Tex. Crim. App. 2009) (habeas applicant sentenced to a term of imprisonment in Texas was sent to Georgia to answer charges there, then placed on probation in Georgia and never incarcerated pursuant to his Texas sentence, was entitled to credit against his Texas sentence for time spent erroneously released); *Ex parte Baker*, 297 S.W.3d 256, 259 (Tex. Crim. App. 2009) (habeas applicant entitled to credit for time when he was erroneously released after completing a sentence in Harris County when he should have remained in confinement to complete another sentence imposed by Gillespie County).

sentence when the individual, through no fault of his or her own, was erroneously released from custody by the State."[4]  It would be unreasonable, we have observed, and would defy human nature to expect one who has been erroneously released from custody to insist to the authorities that he should be re-incarcerated.[5]

The instant case is not, strictly speaking, a case of erroneous release.  Here, the applicant was legitimately released on an appeal bond after his conviction had been reversed by the court of appeals.  But the applicant should have been re-incarcerated once his conviction was final in 1987.  Unfortunately, a warrant for his arrest after the appellate mandate issued was not signed until 2007, twenty years later.  Both the applicant and his wife testified at the writ hearing that, during those twenty years, the applicant was never notified that his sentence had been affirmed and that the appellate mandate had issued.  In the meantime, the applicant  remarried, moved from state to state, started up a new business venture and became a productive member of the various communities in which he lived.  He argues that, through no fault of his own, he was allowed to remain at large for twenty years when he could have been in custody serving time on his sentence, which he would have discharged long ago.

There is another line of Texas cases that generally governs whether time credit should be allowed for inmates who are inadvertently permitted to remain at large for a period of time

---

[4]

 *Ex parte Baker*, *supra*, at 258; *see also Ex parte Hale*, *supra*, 869-72.

[5]

 *Ex parte Rowe*, *supra*, at 20; *Ex parte Baker*, *supra*, at 259.

following an appellate mandate of affirmance. In these cases, we have held that when the defendant was out on bond pending appeal of a judgment of conviction and the conviction was affirmed, but later it was noticed that the applicant was never taken into custody, the applicant was *not* entitled to be relieved from serving the sentence and should *not* be given credit against his sentence for the time that he was not in custody.[6] These cases all seem to hinge, however, on whether the applicant ever became aware that his sentence had been affirmed on appeal and a capias issued for his arrest.

In *Ex parte Dunn*, the applicant was out on an appeal bond when his sentence was affirmed, and the clerk of the trial court did not enter a capias for his arrest after the affirmance of his sentence until six years later when the trial court discovered the oversight.[7] Citing to previous cases dealing with terms and conditions set out in bonds, we held that the applicant was not entitled to time credit from the date the mandate issued because he did not comply with the terms of his appeal bond requiring him to appear before the convicting court.[8] It is unclear from our opinion in *Dunn* whether the applicant knew his sentence had been affirmed. But in each of the cases upon which we relied in *Dunn*, it was clear that the

---

[6]    *Ex parte Dunn*, 976 S.W.2d 208 (Tex. Crim. App. 1998); *Ex parte Francis*, 510 S.W.2d 345 (Tex. Crim. App. 1974); *Ex parte Rayburn*, 146 Tex. Crim. 204, 172 S.W.2d 505 (1943); *Ex parte Underwood*, 94 Tex. Crim. 157, 248 S.W. 551 (1923).

[7]    976 S.W.2d at 209-10.

[8]    The bond required the applicant to appear before the convicting court "from day to day and from term to term of the same and not depart without leave of the Court in order to abide the judgment of the Court of Criminal Appeals of the State of Texas." *Id*. at 210-11.

applicants were aware that their sentences had been affirmed on appeal.[9] Although it is not explicitly stated that Dunn knew his sentence had been affirmed, we implied that he did, having taken pains in our opinion to point out that the applicants in the prior cases were all aware that their convictions had been affirmed.

The State, the applicant, and the trial court all agree that the principle of reasonableness underlying the erroneous release cases should apply on the facts of this case, and that the applicant should be granted the relief. We agree that this same principle should apply, at least on the particular facts before us. Because of the inaction of the State,[10] the applicant was never informed that a mandate of affirmance had issued in his case. He never

---

[9] *Ex parte Francis*, *supra*, at 346-47 (applicant failed to take make appearance in trial court in accordance with his appellate bond when he learned that his conviction had been affirmed); *Ex parte Rayburn*, *supra*, at 205-206 (after learning of the affirmance of his conviction, applicant presented himself for admittance to the penitentiary instead of to trial court, as per the conditions of his appellate bond); *Ex parte Underwood*, *supra*, at 158-59 (applicant knew his conviction was affirmed on appeal because he paid the fine at that time, but because he made no appearance before trial court in accordance with the appellate bond, he was not entitled to credit for time spent at large when he was not immediately taken into custody to serve jail sentence).

[10] TDCJ made numerous attempts to determine the applicant's location after the mandate had issued, but most of those queries went unanswered. The judge of the trial court received letters of inquiry from TDCJ as to the applicant's status and whereabouts in September, October, and December of 1991, but there is no record of any response to those letters from the trial court. TDCJ also sent a letter of inquiry to the Dallas County District Attorney's Office in January of 1992, but there is also no record of any response to this letter. TDCJ sent further letters of inquiry to the judge of the trial court in May and July of 1992. The court coordinator responded to the July letter that there was an outstanding warrant for the applicant, but in reality, no record of any warrant for the applicant existed at that time. Additionally, at no point between 1985 and 1992 did the trial court or any other entity inform Southwest Bonding Company that the applicant's conviction had been affirmed and that a mandate had issued in the case. After yet another inquiry from TDCJ, a warrant finally issued for the applicant in November 2007 and remained in effect until the applicant's eventual arrest for DWI in 2009.

violated the conditions of his appellate bond, having never been called to appear before the court upon the affirmance of his conviction on appeal. Instead, he was allowed to remain at large erroneously, without his knowledge and through no fault of his own. Under these particular circumstances, we agree with the parties and the trial court that the applicant is entitled to day-for-day time credit from the time the appellate mandate issued to the time he was finally arrested on the warrant.[11]

**CONCLUSION**

Had the applicant been timely returned to custody following the issuance of the appellate mandate of affirmance in 1987, his sentence would have discharged in approximately 2001. We agree that the applicant is entitled to relief in the form of credit for

---

[11]

Presiding Judge Keller would also grant the applicant relief, but on a different theory. She would hold that, because the applicant's conviction was reversed by the court of appeals, he no longer stood convicted and should therefore be "relieved from the duty to enquire further into the outcome of the appellate proceedings." Concurring opinion, at 3. But we do not read the case law necessarily to impose any such duty to enquire—under *any* circumstances. The appellate-bond cases seem simply to hold that when an appellant *does* discover, by whatever means, that his conviction has ultimately been affirmed on appeal, he has a duty to present himself to the convicting court, in accordance with his bond, for appropriate disposition in keeping with the ultimate appellate mandate. *This* duty is not contingent on whether an intermediate appellate court affirmed or reversed his conviction. When an intermediate appellate court in Texas reverses a criminal conviction, that reversal is subject to being overturned by this Court on a State's petition for discretionary review. That the intermediate court reversed the conviction does not mean that an appellant who is subsequently released by this Court on an appellate bond under Article 44.04(h), will never have to present himself to the convicting court—quite the contrary, he most certainly *will* if this Court reinstates his conviction on discretionary review. In the instant case, had the applicant ever received actual notice in any form that the trial court's judgment of conviction was ultimately reinstated by this Court, we do not think (nor do we understand Judge Keller to advocate) that it would have been appropriate to relieve him of the obligations of the appellate bond we set for him just because he was not officially notified of that ultimate disposition. This applicant never received any form of notice.

the time he was at large after the mandate issued and conclude that, with this credit toward his sixteen-year sentence, he has served it in full and shall be immediately discharged from the custody of TDCJ.  A copy of this opinion shall be sent to TDCJ.

It is so ordered.


DELIVERED:      March 9, 2011
PUBLISH